WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
October, 1878.

## MATTER OF WRIGHT.

*In the matter of the accounting of* GEORGE S. WRIGHT, *administrator, etc., of* JOHN T. WRIGHT, *deceased.*

Upon a re-hearing in the Surrogate's Court, where the decree previously entered therein has been reversed on appeal, and the cause remitted, the evidence taken at the former hearing may be read, and either party may interpose objections thereto, and adduce additional evidence.

THIS cause was determined in this court and a decree entered. An appeal was taken to the General Term of the Supreme Court, where the decree was affirmed

in part and reversed in part. An appeal was then taken to the Court of Appeals, where the decree of the Surrogate and the judgment of the Supreme Court ᵃre reversed on one point, and the whole case re-ᵢited to this court for a rehearing.

The facts appear in the opinion.

JAMES THOMPSON, *for the administrator.*

ALEX. THAIN, *for next-of-kin.*

THE SURROGATE. — The question now to be considered is, what is the proper mode of proceeding on the rehearing, the counsel for the administrator claiming that the whole body of the evidence received on the original hearing is to remain precisely as it stands, while the counsel on the other side contends that, if taken at all, it must be so taken subject to such objections as either party may see fit to raise, in the same manner as if the testimony were offered on an original hearing. Both agree that either party may adduce additional evidence.

It is a little remarkable that no case can be found by the learned counsel, nor do I know of any, determining the mode of proceeding in a case like this. Ordinarily, where a case at law is sent back for re-trial, the proceeding is, in every sense, a new trial. It may occur before a different judge from the one who presided at the first trial, and, certainly, before a different jury. Hence the necessity of trying the case *de novo.* But here the cause is remitted for rehearing to the same forum, presided over by the same person who heard the case in the first instance. I can, therefore, see no good end that is to be subserved by

going over the same ground, covered by some 700 or 800 printed pages, again. On a rehearing in chancery, to which this may, in some respects, be likened, the pleadings were opened and the evidence read in the same manner as upon an original hearing. (Margravine of Anspach *v.* Noel, 1 *Mad.*, 310.) The same objections might be raised — as want of parties or other grounds — as upon an original hearing. (2 *Dan. Ch.*, 650.) An objection of substance might be raised by a defendant for the first time upon a rehearing, even though it might prove fatal to the whole bill. (Harrison *v.* McMennomy, 2 *Edw.*, 251.) On a rehearing in that court, it was the practice to read the evidence taken on the first hearing, subject to objections to be taken, as above shown, and also to permit new evidence to be put in in certain cases. The Chancellor or Vice-Chancellor could, on petition, grant a rehearing before himself. (Rules 112, 113 of the Court of Chancery, 1839; Land *v.* Wickham, 1 *Paige*, 256.) The Surrogate of New York, by the act of 1870 (*Laws of* 1870, *ch.* 359) has this power, and I cannot conceive that it can make any difference whether this court has and exercises like power, or acts in obedience to the mandate of an appellate court. In either case, it should be guided, in the main, by the practice prevailing in courts of equity.

Here, I shall allow the evidence taken on the former hearing to be read, and shall permit either party to interpose any objection in the progress of the reading he may see fit, and will hear any additional evidence material to the case which either party may offer.